UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORILLARD TOBACCO COMPANY, a Delaware corporation, | ) ) ) ) |
| Plaintiff | ) ) |
| v. | ) No. 03 C 5127 ) |
| DIVISION AND NOBLE AMOCO CORP., an Illinois corporation, | ) Judge Rebecca R. Pallmeyer ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This is one of dozens of cases in which Plaintiff Lorillard Tobacco Company ("Plaintiff" or "Lorillard") claims that a local retailer has sold counterfeit cigarettes in violation of Lorillard's registered trademarks. Lorillard filed this action pursuant to the Lanham Act, 15 U.S.C. § 105 *et seq.*, against Defendant, Division and Noble Amoco Corporation ("Defendant" or "D&N"), the operator of a gas station that sells cigarettes, including Plaintiff's Newport brand. Count I alleges trademark infringement in violation of 15 U.S.C. § 1114(1). In Count II, Plaintiff alleges that Defendant used false designations of origin and false and misleading descriptions in violation of 15 U.S.C. § 1225(a). In Count III, Plaintiff alleges trademark dilution in violation of federal law, 15 U.S.C. § 1225(c). Counts IV through VI allege state trademark dilution under 765 ILCS 1036/65, common law unfair competition, and deceptive trade practices in violation of 815 ILCS 510/2 *et seq.* Plaintiff now moves for summary judgment on its Count I claim for federal trademark infringement and counterfeiting, alleging that there are no genuine issues of material fact as to Defendant's liability for selling and offering for sale counterfeit Newport cigarettes. For the reasons stated below, the motion is granted.

## FACTS

**The Parties**

Plaintiff Lorillard, a Delaware corporation with its principal place of business in North Carolina, is the fourth largest tobacco company in the United States. (Plaintiff's Local Rule 56.1 Statement of Undisputed Facts (hereinafter "Plaintiff's 56.1") ¶¶ 1-2.) Defendant is an Illinois corporation doing about seven thousand dollars ($7,000.00) business per day as D&N Amoco gas station at 1334 Division, Chicago, Illinois. (Plaintiff's 56.1 ¶¶ 5, 8.) D&N is owned by Tomy Philip and managed by Silvester Patha. (Id. ¶¶ 6-7; Deposition of Tomy Philip, at 5-6, 14-15, Ex. 3 to Plaintiff's 56.1 (hereinafter "Philip Dep.").) Mr. Philip, the president of the corporation and its sole owner, personally assists in the purchasing, sales, and operations at the gas station. (Philip Dep., at 11.)

According to Mr. Philip, D&N sells approximately 150 packs (15 cartons) of cigarettes per day, or approximately 100 cartons a week. (Id. ¶ 9; Philip Dep., at 25.) Of those 100 cartons, Mr. Philip testified, 30 cartons are Newport cigarettes, and 15 to 20 cartons are Newport "Box Kings." (Id. at 26.) D&N ordinarily purchases cigarettes for resale from Eby-Brown and from Montrose Wholesale, but as often as every week, when D&N runs out of cigarettes, Mr. Philip will purchase a few cigarettes from a "Cash and Carry" store. (Philip Dep., at 27, 86.)

Newport is the leading brand of menthol cigarettes sold in the United States and the second leading cigarette brand overall, with approximately eight percent of the national sales market.[1]

---

[1] Defendant denies any knowledge of this (Def. 56.1 ¶ 12-17), but it is supported by Lindsley's declaration, and Defendant has offered no evidence to the contrary. The court deems this assertion admitted.

2

(Plaintiff's 56.1 ¶¶ 15-16; Declaration of Victor Lindsley, Senior Group Brand Director, at ¶¶ 2,4, Ex. 2 to Plaintiff's 56.1 (hereinafter "Lindsley Declaration").) Philip acknowledged that Newport is one of D&N's two top selling brands.[2] (Plaintiff's 56.1 ¶ 18; Philip Dep., at 26.)

**Enforcement of Plaintiff's Marks**

Lorillard has obtained five federal trademarks for its Newport brand, four of which have achieved incontestable status, and all five of which are used on every pack and carton of Newport cigarettes. (Plaintiff's 56.1 ¶¶ 22-32; Exs. 5-9 to Plaintiff's 56.1; Lindsley Declaration, at ¶ 3; *for photographs see* Exs. 10 and 11 to Plaintiff's 56.1.)[3] Since July 2003, Lorillard has identified more than 50 retail and wholesale establishments selling counterfeit Newport cigarettes in the Chicago area and has filed nearly 40 separate suits for infringement. (Plaintiff's 56.1 ¶ 33.) In several such cases, including this one, Lorillard obtained *ex parte* seizure orders to remove the counterfeit cigarettes. (*Id.* ¶ 34.) As early as August 2002, Lorillard warned its retailers in writing that counterfeit cigarettes were on the market. (*Id.* ¶ 35; Lorillard Letter dated August 20, 2002, Ex. 12 to Plaintiff's 56.1.) On April 10, 2003, Lorillard sent a second letter in which it specifically warned retailers to be suspicious of cigarettes sold at prices lower "than what you customarily pay from legitimate wholesalers." (Plaintiff's 56.1 ¶ 36; Lorillard Letter, dated April 10, 2003, Ex. 13 to Plaintiff's 56.1.)[4]

---

[2] He nevertheless characterized Newport Menthol's share of his cigarette business as "not that much." (Defendant's 56.1, ¶ 18; Philip Dep., at 27.)

[3] The registered marks include Reg. No. 1,108,876; Reg. No. 1,178,413; Reg. No. 1,191,816; Reg. No. 1,920,066; and Reg. No. 2,600,870.

[4] Defendant's contend that those letters failed to warn the small retailers what to look
(continued...)

3

## Discovery of Allegedly Counterfeit Newport Cigarettes at D&N Amoco

H. Silva is a sales representative for Lorillard, responsible for calling on stores in the Chicago area. (Plaintiff's 56.1 ¶ 37; Declaration of H. Silva, July 17, 2003, Ex. 14 to Plaintiff's 56.1 (hereinafter "Silva Declaration "), at ¶ 1.) On July 11, 2003, Mr. Silva purchased a carton of Newport Box 80 cigarettes that he believed to be counterfeit from D&N. (Silva Declaration ¶¶ 3, 4.) Mr. Silva sent the suspect carton to Lorillard's corporate headquarters for further inspection, and Lorillard's Manager for Sales Planning, Ed O'Brien, confirmed that the cigarettes Mr. Silva purchased were counterfeit, based upon the appearance of the "tear tape tabs," the quality of the printing on the package's side panel, and out-of-date product codes that appeared at the end of the carton and on the end of the cigarette packages. (Plaintiff's 56.1 ¶¶ 38-9; Declaration of Ed O'Brien, July 17, 2003, at ¶¶ 2-10, Ex. 15 to Plaintiff's 56.1 (hereinafter "O'Brien Declaration").) Specifically, Mr. O'Brien explained that the tear tab for the cellophane wrappers on genuine Newport cigarettes is 5/16 of an inch long, whereas the tear tabs on the cigarette packs purchased from D&N were only approximately 3/16 of an inch long. (Plaintiff's 56.1 ¶¶ 40, 41; O'Brien Declaration, at ¶ 5.) Second, the printing method used in genuine Newport products results in a blurry quality to the words "Lorillard" and "Greensboro" on the side panel of the package; printing on the cigarettes packages obtained from D& N lacks that blurry quality. (Plaintiff's 56.1 ¶¶ 42, 43; O'Brien Declaration, at ¶¶ 6. 7.) Third, a product code "103T5" appeared on the cigarette packs obtained from D&N, and code "1003 I T" appeared on the cigarette carton; according to Mr. O'Brien, each

---

⁴(...continued)
for in connection with counterfeit Newport cigarettes. (Defendant's 56.1 ¶¶ 35-6.) In any event, D&N does not deny receiving these letters. (Id.)

of these codes is out of date, indicating that the product is counterfeit. (Plaintiff's 56.1 ¶¶ 44-7; O'Brien Declaration, at ¶¶ 8, 10.) Plaintiff explains that, in an urban setting like Chicago, inventory turnover is rapid, meaning that an old product code supports a "high likelihood" of counterfeiting. (O'Brien Declaration, at ¶ 9.) Mr. Philip arguably confirmed that observation by his testimony that he regularly runs out of the cigarettes he purchases from distributors and buys extras from a "Cash and Carry" store. It is undisputed, however, that Philip had no knowledge of the counterfeit nature of any cigarettes he may have purchased and no intent to sell counterfeit product. (Philip Dep., at 93-4.)[5] Mr. Philip did not recall whether he received either of the two warning letters from Lorillard, but he denied having been offered cigarettes at a lower-than-normal price. (Id. at 73-76, 93.)

On July 24, 2003 Lorillard obtained an *ex parte* seizure order and seized seven full cartons of Newport cigarettes from D&N pursuant to that order. (Plaintiff's 56.1 ¶¶ 48-9; Defendant's 56.1 ¶ 48.) Those seven cartons were behind the cash register and mixed together with other cigarette brands and with genuine Newport brand cigarettes. (Plaintiff's 56.1 ¶ 51-2; Declaration of Jeffrey G. Mote, at ¶¶ 4-9, Ex. 16 to Plaintiff's 56.1 (hereinafter "Mote Declaration").) Based on the characteristics described above – shorter pull tabs, clarity of printing, and out-of-date product codes – Plaintiff asserts that these seven cartons constitute counterfeits. Defendant's only response to these

---

[5] Philip testified at his deposition as follows:
Q: Did you knowingly and intentionally sell counterfeit cigarettes of any kind, including Newports?
A: No.
Q: Did you stock counterfeit cigarettes knowing they were counterfeit?
A: No.
Q: Did you ever attempt to purchase counterfeit cigarettes?
A: No.
(Philip Dep., at 93-4.)

assertions is to contend, without citation to any evidence, that chemical testing of the cigarettes themselves is required to determine whether they are genuine or counterfeit. (Defendant's 56.1, ¶¶ 39-47, 57.)

## DISCUSSION

**Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Burrell v. City of Mattoon*, 378 F.3d 642, 646 (7th Cir. 2004) (*citing* FED R. CIV. P. 56(c)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) *and cases cited therein.*) When the moving party has supported its factual assertions with depositions and other materials in the record, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Burrell*, 378 F.3d at 646 (*citing* FED.R.CIV.P. 56(e)). Summary judgment, however, is inappropriate when alternate inferences can be drawn from the available evidence. *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004) *citing Hines v. British Steel Corp.*, 907 F.2d 726, 728 (7th Cir. 1990).

Plaintiff contends that its Rule 56.1 statement, in its entirety, should be deemed admitted due to Defendant's alleged failure to comply with Local Rule 56.1. Under that rule, a party opposing summary judgment must prepare a concise response to the moving party's Rule 56.1 statement, including a response to each of the movant's numbered paragraphs and, in the case of disagreement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon."

6

Local Rule 56.1(b)(3)(A). Although some of Defendant's denials are unsupported, other paragraphs of the response do refer to deposition testimony. (*See* Defendant's 56.1 ¶¶ 8, 18, 19-20.) To the extent Defendant's denials of any information in Plaintiff's 56.1 statement are not supported by citations to record evidence, the court agrees with Plaintiff that those denials do not create a dispute of material fact.

**Defendant's Liability**

Because sellers bear strict liability for violations of the Lanham Act, even innocent dealers who sell goods bearing an infringing mark are liable for trademark infringement.[6] 4 MCCARTHY ON TRADEMARKS § 25.27; *see also Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1153 n.6 (7th Cir. 1992). Defendant's claims of ignorance as to the status of the cigarettes are, therefore, irrelevant to the issue of liability. In order to succeed on its claims of trademark infringement and counterfeiting, Plaintiff need only show, first, that its marks are protectible and, second, that their use by Defendant are likely to result in confusion on the part of consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (*citing Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000)). Once a trademark is registered, there is a presumption as to its validity absent proof of a legal defense or defect. *Packman*, 267 F.3d at 638; *see*

---

[6] The Lanham Act provision on liability make no mention of intention:
(1) Any person who shall, without the consent of the registrant--
  (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C.A. § 1114.

*also* 15 U.S.C. § 1115(a). Accordingly, this court presumes Lorillard's marks are protectible based on the undisputed evidence of registration and moves to discussion of the second element.

Typically, existence of consumer confusion is a question of fact, but it can be answered on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 677 (7th Cir. 2001) (*citing Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 173 (7th Cir. 1996)). In establishing existence of consumer confusion by use of a protected trademark, courts look to seven factors: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *CAE*, 267 F.3d at 677-8 *and cases cited therein*. These factors may be assigned varying weights by the courts and no one factor is dispositive. *Id.* Three particularly important factors are: the similarity of the marks, any actual confusion, and defendants' intent. *Barbecue Marx, Inc., v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

As noted, there is no indication here of any intent on the part of Defendant to sell counterfeit cigarettes. All other factors in the analysis, however, weigh heavily in favor of Lorillard. The counterfeit marks were so similar to the genuine marks that Lorillard's own sale representatives needed confirmation of his conclusion that the cartons were counterfeit from other company employees. The counterfeit and genuine products were functionally identical and the counterfeit product was displayed on shelves side by side with genuine Newport cigarettes. As to the fourth

8

factor, consumers' degree of care is likely to be minimal in circumstances such as those here, where the product at issue is widely accessible and inexpensive. *CAE, Inc.*, 267 F.3d at 683. The fifth factor, strength of the Plaintiff's mark, refers to the distinctiveness of the Lorillard marks in question. These marks are found on cigarette packages of one of the leading cigarette manufacturers in the country. It is undisputed that all five marks are registered and protected, and four of those marks are now uncontestable. These factors also weigh in favor of Plaintiff.

A showing of actual confusion, the sixth factor, is accorded great weight but is not required in order to establish that a likelihood of confusion exists. *CAE, Inc.*, 267 F.3d a 685 *and cases cited therein*. In any event, although there is no evidence of actual confusion on the part of any particular consumer, the court agrees with Plaintiff that, where even its own employees had difficulty distinguishing the counterfeit product from the genuine product, "actual confusion is inevitable." (Plaintiff's Memorandum in Support of Summary Judgment, at 9.) Defendant offers no evidence to the contrary, and it appears Mr. Philip, D&N's purchaser, is unable to distinguish counterfeit cigarettes from genuine Newports.[7] These circumstances amply support the conclusion that a consumer would also be confused by the counterfeit cigarette packaging.

The circumstances presented here do not, on the other hand, support Plaintiff's allegation that Defendant intended to "create confusion and profit from it by selling, offering for sale, and

---

[7] Defendant cites *In re Lorillard Tobacco Co.*, 370 F.3d 982 (9th Cir. 2004), where the Ninth Circuit court concluded it had no jurisdiction over an appeal from the district court's denial of Lorillard's request for an *ex parte* order permitting seizure of counterfeit cigarettes from a Nevada retailer. In Defendant's view, language in a dissenting opinion in that case suggests that Plaintiff has not met its burden here without presenting a chemical analysis of the cigarettes found in the counterfeit packaging. The court respectfully disagrees; use of counterfeit marks on packages of cigarettes violates Plaintiff's statutory rights, even if the cigarettes contained in those packages are functionally identical to Plaintiff's product.

distributing the lower price counterfeit products at full retail price to the consumer." (Plaintiff's Memorandum in Support of Summary Judgment, at 7.) There is no evidence that Philip obtained the counterfeit cigarettes at a reduced price, nor that he had any other information that should have alerted him that the cigarettes at issue were counterfeit, let alone that he intended to confuse customers. As explained above, however, a seller is strictly liable for trademark infringement. *Hard Rock Café*, 955 F.2d at 1153 n.6. Accordingly, Defendant's intent is irrelevant to the likelihood of confusion analysis. *CAE, Inc.*, 267 F.3d at 686 *and cases cited therein.* As the evidence amply supports Plaintiff's Lanham Act claim, the court grants summary judgment in favor of Plaintiff on its claim that Defendant is liable for trademark infringement.

## Damages

Perhaps in tacit acknowledgment that there is no evidence of intentional infringement here, Plaintiff does not seek actual damages. Instead, Plaintiff requests an award of statutory damages under 15 U.S.C. § 1117(c). That section provides, in the absence of a finding of wilfulness, for an award of statutory damages in the amount of "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; . . . ." Plaintiff urges that an appropriate award in this case is $1,000 for each of the five marks that appeared on the seven counterfeit cartons of cigarettes, a total of $35,000. In Plaintiff's view, an award of at least this size is required "to encourage retailers to ask questions about goods that are cheap, of low quality, or sold by questionable people." (Plaintiff's Memorandum in Support of Summary Judgment, at 13.)

In this case, however, there is simply no evidence that the goods at issue were "cheap, of low quality, or sold by questionable people." Plaintiff does not suggest that any of Defendant's three

10

sources for cigarettes are "questionable," nor is there any evidence that the amount Defendant paid for the counterfeit cartons of cigarettes is less than the amount he pays for genuine Newports. Finally, as Defendant emphasizes, there is no evidence of at all concerning the quality of the counterfeit cigarettes. Simply put, there is no evidence that Defendant knew, nor that he could have had any reason to recognize, that the cartons of Newports were not Lorillard's own product. *Cf. Nike, Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp.2d 1352 (S. Ga. 2003) (awarding $900,000 in statutory damages for infringement of nine marks against a $600 million wholesale business which had been sued for infringement before and was arguably "grossly negligent" in failing to suspect that the "Nike" goods it had purchased were counterfeit).

The court is prepared to enter an injunction against any further acts of infringement, but is inclined to award the minimum statutory damages. Five marks appear on the counterfeit carton, but the court views the attempted sale of that carton as a single violation of Lorillard's statutory rights. The court therefore expects to enter an award of $500.00 per carton, a total of $3,500.00, for what it understands is a first-time infringement of Lorillard's copyrights.

## CONCLUSION

Plaintiff's motion for summary judgment (Doc. No. 20-1) is granted. Judgment is entered in favor of Plaintiff on Count I of its complaint, and the court awards statutory damages on this count in favor of Plaintiff and against Defendant in the amount of $3,500.00.

ENTER:

Dated: January 20, 2005

REBECCA R. PALLMEYER
United States District Judge

11